UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JENNI INWOOD O'GORMAN,<br><br>Plaintiff,<br>v.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,<br><br>Defendant. | NO. 2:16-cv-01048-RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Jenni Inwood O'Gorman's Motion for Judgment under Federal Rule of Civil Procedure 52 based on an administrative record created in an underlying Employee Retirement Income Security Act (ERISA) dispute. Dkt. # 16. Defendant Hartford Accident Life and Insurance Company ("Hartford") opposes Plaintiff's motion. Plaintiff brought this action under ERISA, 29 U.S.C. § 1001, *et seq.* asking the Court to declare her "disabled" under the Long-Term Disability (LTD) Plan ("the Plan") provided through her employer by Hartford and, subsequently, to award her LTD benefits under the Plan.

ORDER - 1

## II. LEGAL STANDARD

Typically, a request to reach judgment prior to trial would be made under a Rule 56 motion for summary judgment, however under such a motion the Court is forbidden to make factual findings or weigh evidence. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractor's Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Instead, the parties here propose the Court conduct a trial on the administrative record under Rule 52. *See* Dkt. # 10. The procedure for such a trial is outlined in *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (noting that "the district court may try the case on the record that the administrator had before it."). In a trial on the administrative record, the district judge reviews the evidence to determine "whether [the Plaintiff] is disabled within the terms of the policy." *Id.* Further, "in a trial on the record, but not on summary judgment, the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Id.*

"ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging eligibility determinations." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). However, where, as here, the parties have stipulated to *de novo* review, the Court may accept the stipulation and review the administrative record accordingly. *Bigham v. Liberty Life Assurance Co. of Boston*, 148 F.Supp.3d 1159, 1161 (W.D. Wash. 2015); *Bunger v. Unum Life Ins. Co. of Am.*, 196 F.Supp.3d 1175, 1177 (W.D. Wash. 2016). This *de novo* standard requires the Court to make findings of fact and weigh the evidence. *See Walker v. Am. Home*

*Shield Long Term Disability Plan*, 180 F.3d 1065, 1069 (9th Cir. 1999) (*de novo* review applies to plan administrator's factual findings as well as plan interpretation).

The Court issues the following findings and conclusions, pursuant to Rule 52.

### III. FINDINGS OF FACT

1. Plaintiff Jenni Inwood O'Gorman was employed by Continental Mills, Inc. as a "Data Analyst." HARTRCD 294.[1] This position required the ability to "interpret an extensive variety of data and deal with a variety of data collection points," "define problems," "collect data," establish facts," "draw valid conclusions," "analyze data critically and edit objectively," "read, analyze, and interpret consumer data and translate into action items," write reports, business correspondence, and procedural manuals," "chart processes," and "translate them into user documentation." HARTRCD 189. Additionally, Plaintiff was required to "generat[e] reports . . . highlighting consumer data," "[d]evelop [r]eport queries and take responsibility for the management of new and existing report files," "provide reporting assistance to other departments," "monitor and review cases for coding accuracy," "utilize computer systems" to provide reports to an internal audience, and conduct audits. *Id.*

---

[1] The administrative record submitted to the Court consists of two separately paginated documents. One document contains the Plan at issue and is marked "HARTPLN." The second document contains other documentation that Hartford considered in its benefits decision and is marked "HARTRCD." For the purpose of consistency, the Court uses this citation style.

2. Plaintiff was offered LTD benefits by her employer through a Plan administered by Hartford, Policy Number GRH-677928. HARTPLN 6. As a full-time employee working a minimum of 32 hours per week, Plaintiff was eligible for LTD benefits.

3. The Plan provided in relevant part:

> *Disability or Disabled* means You are prevented from performing one or more of the Essential Duties of:
>
> 1) Your Occupation during the Elimination Period;
> 2) Your Occupation, for the 24 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
> 3) after that, Any Occupation.
>
> Your Disability must result from . . . sickness[.]
>
> . . .
>
> *Essential Duty* means a duty that:
>
> 1) is substantial, not incidental;
> 2) is fundamental or inherent to the occupation; and
> 3) cannot reasonably be omitted or changes.
>
> Your ability to work the number of hours in Your regularly scheduled work week is an Essential Duty.
>
> . . .
>
> *Any Occupation* means any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of:
>
> 1) the product of Your Indexed Pre-disability Earnings and the Benefit Percentage; or
> 2) the Maximum Monthly Benefit.

HARTPLN 38–40.

ORDER - 4

4. The Plan also dictates that benefit payments will be terminated on the earliest of:

   1) the date You are no longer disabled;
   2) the date You fail to furnish Proof of Loss;
   3) the date You are no longer under the Regular Care of a Physician;
   4) the date You refuse Our request that You submit to an examination by a Physician or other qualified medical professional;
   5) the date of Your death;
   6) the date You refuse to receive recommended treatment that is generally acknowledged by a Physician to cure, correct, or limit the disabling condition;
   7) the last day benefits are payable according to the Maximum Duration of Benefits Table;
   8) the date Your Current Monthly Earnings exceed:
      a. 80% of your Indexed Pre-disability Earnings if You are receiving benefits for being Disabled from Your Occupation; or
      b. the product of Your Indexed Pre-disability Earnings and the Benefit percentage if You are receiving benefits for being Disabled from Any Occupation;
   9) the date no further benefits are payable under any provisions in The Policy that limits benefit duration; or
   10) the date You refuse to participate in a Rehabilitation program, or refuse to cooperate with or try:
      a. modifications made to the work site or job process to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Your Occupation;
      b. adaptive equipment or devices designed to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Your Occupation;
      c. modifications made to the work site or job process to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Any Occupation, if You were receiving benefits for being disabled from Any Occupation;
      d. adaptive equipment or devices designed to accommodate Your identified medical limitations to enable You to perform the Essential Duties of Any Occupation, if You were receiving benefits for being disabled from Any Occupation; provided a qualified Physician or other qualified medical professional agrees that such modifications, Rehabilitation program or adaptive equipment accommodate Your medical limitation.

ORDER - 5

HARTPLN 33.

5. Records indicate that, on June 6, 2013, Plaintiff suffered a "right-sided intraparenchymal hemorrhage in the basal ganglia with some intraventricular extension." HARTRCD 614. This condition is characterized in the record as a stroke. Plaintiff also had a history of hypertension and vitreous hemorrhage in her left eye. *Id.* At the time she was admitted to the hospital for the stroke, it was discovered that Plaintiff also had "acute kidney injury." HARTRCD 643. Plaintiff was hospitalized for three weeks, and completed inpatient rehabilitation for another three weeks, until she was released on July 18, 2013. HARTRCD 344.

6. After her hospitalization, Plaintiff applied for and was awarded LTD benefits beginning in September of 2013. HARTRCD 159.

7. Plaintiff returned to work at Continental Mills part-time on March 20, 2014. HARTRCD 159.

8. Plaintiff suffers from spastic hemiplegia and dystonia—neurological conditions which cause muscle tightness, stiffness, and painful spasms, as well as involuntary repetitive movements in her left arm and hand. HARTRCD 324, 420, 728. Plaintiff has spasticity in her left arm and leg, and dystonia in her left arm. HARTRCD 324. Due to the spasticity in her left leg, her gait is altered, she has minimal control over her left leg and foot, and she requires an ankle brace and cane to walk. HARTRCD 220, 728, 629. She falls frequently. HARTRCD 215–16, 22. She cannot stand for more than fifteen minutes without pain in her left leg.

HARTCRD 219. Her ability to walk more than a short distance is hampered. HARTRCD 222, 227, 229. Ms. O'Gorman requires her husband's help to get to and from work. She cannot drive, and her husband must carry her belongings to the car and into her workplace. HARTRCD 218.

9. On September 18, 2015, Hartford sent Plaintiff a letter informing her that it had terminated her LTD benefits effective September 6, 2015. HARTRCD 79.

10. On March 10, 2016, Plaintiff timely appealed the termination of her LTD benefits. HARTRCD 268. Hartford took no action on the appeal, and Plaintiff filed this action under § 502 of ERISA. Dkt. # 1.

11. On September 1, 2016—170 days after Plaintiff filed her appeal—Hartford sent Plaintiff's attorney a letter admitting that it failed to comply with ERISA by failing to act on her appeal within 45 days. Doermann Decl., Dkt. # 17-3, Ex. 3.[2] The letter stated that Hartford's Appeal Unit had sent the LTD claim "back to the claim office that made the September 18, 2015 decision in order for [Plaintiff's] LTD benefits to be reinstated." *Id.* The letter continued, "Once the file is received, the claim office will re-review the information in the file (updating medical documentation if needed), and will make a subsequent claim decision." *Id.*

---

[2] Hartford's post-appeal correspondence with Plaintiff was not submitted as part of the administrative record because it was not received until after suit was filed in this case. However, the Court concludes that this correspondence is vital to understanding the procedural history of this case, and so will permit it to be admitted into the record in this proceeding. *See Mongeluzo*, 46 F.3d 938 at 943 (concluding that courts may consider extra-record evidence if it is "necessary to conduct an adequate de novo review of the benefit decision").

Finally, the letter stated that "LTD benefits will be reinstated while the claim office continues with the review." *Id.*

12. On September 9, 2016, Hartford sent a subsequent letter to Plaintiff informing her that her LTD benefits would be terminated effective October 1, 2015. Doermann Decl., Ex. 4. The letter stated that, after receiving verification of Plaintiff's earnings, Hartford determined that Plaintiff's Current Monthly Earnings for the months of October 2015 to the present were greater than 60% of Plaintiff's Indexed Pre-disability Earnings. *Id.* Therefore, Hartford concluded, Plaintiff "no longer met the definition of Disability as of 10/1/2015, and no further benefits [we]re payable beyond 9/30/2015." *Id.*

13. On September 29, 2016, Plaintiff amended her Complaint to reflect the September 9, 2016 benefits termination. Dkt. # 13.

## IV. CONCLUSIONS OF LAW

### A. Standard under ERISA

1. ERISA provides that a qualifying ERISA plan "participant" may bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B); *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) (ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court.") The Court finds that Ms. O'Gorman is a qualified participant.

2. As discussed above, ERISA does not set forth the appropriate standard of review for actions challenging benefit eligibility determinations. *Firestone*, 489 U.S. at 109. The parties, however, have stipulated to *de novo* review. Dkt. # 10. The Court accepts the parties' stipulation and reviews the record *de novo*. "When conducting a de novo review of the record, the court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1295–96 (9th Cir. 2010). The administrator's "evaluation of the evidence is not accorded any presumption of correctness." *Perryman v. Provident Life Ins. & Acc. Ins. Co.*, 690 F.Supp.2d 917, 942 (D. Ariz. 2010). In reviewing the administrative record and other admissible evidence, the Court "evaluates the persuasiveness of each party's case, which necessarily entails making reasonable inferences where appropriate." *Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 12 F.Supp.3d 1237, 1251 (N.D. Cal. 2014) (quoting *Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program*, 718 F.Supp.2d 1151, 1162 (N.D. Cal. 2010)).

3. When a district court "reviews a plan administrator's decision under the de novo standard of review, the burden is placed on the claimant." *Muniz*, 623 F.3d at 1294; *see also Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) (claimant "bears the burden of proving his entitlement to contractual benefits"). However, this does not relieve the plan administrator from its duty to engage in a "meaningful dialogue" with the claimant about her claim.

*See Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) ("[W]hat [29 C.F.R. § 2650.503-1(g) calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries . . . [I]f the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it.") Even on *de novo* review, this Court can remand a disability claim to the plan administrator if the record is not sufficiently developed. *See Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir. 1995) (finding that "additional evidence is necessary to conduct an adequate de novo review of the benefit decision" and "leav[ing] to the district court whether to remand to the plan administrator for an initial factual determination"); *Kowalski v. Farella Braun & Martell, LLP*, No. C-06-3341 MMC, 2008 WL 5397511, at *15 (N.D. Cal. Dec. 23, 2008) (finding, on *de novo* review, that there was "inadequate medical and vocational evidence in the record to support a finding on such an issue" and remanding the claim to the administrator for consideration.").

### B. The Court Cannot Determine on this Record Whether Plaintiff is Disabled

4. The parties agree that Plaintiff was covered under the Plan. At issue is whether Hartford correctly denied Plaintiff's claim, and whether Plaintiff has met her burden of proof to show she is disabled. As an initial matter, the Court addresses Hartford's contention that Plaintiff has failed to exhaust her administrative remedies by filing an appeal subsequent to receiving Hartford's September 9, 2016 letter. Plaintiff does not dispute that she did not file a second appeal, but rather

argues that she was not required to do so. The Court agrees. ERISA itself does not require that a participant or beneficiary exhaust administrative remedies in order to bring an action under § 502 of the statute. 29 U.S.C. § 1132. However, the Ninth Circuit has consistently applied a "prudential exhaustion requirement" requiring an ERISA plaintiff claiming denial of benefits to "avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 627 (9th Cir. 2008) (quoting *Diaz v. United Agric. Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995)). But the Ninth Circuit has also held that "a claimant need not exhaust when the plan does not require it." *Spinedex Phys. Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1299 (9th Cir. 2014). Here, the Plan provides only that a participant "*may* appeal to [Hartford] for a full and fair review," but it does not *require* that a participant do so. HARTPLN 36 (emphasis added). The Court has not located any mandatory language in the Plan expressly requiring an appeal as a prerequisite to suit under ERISA[3] and,

---

[3] The Court has located a document in the HARTPLN portion of the record entitled "ERISA INFORMATION," which contains the following language:

> On any wholly or partially denied claim, you or your representative must appeal once to the Insurance Company for a full and fair review. You must complete this claim appeal process before you file an action in court.

HARTPLN 84. Although apparently appended to the Plan, this document is not part of the Plan itself. Rather, it purports to meet the ERISA requirement that beneficiaries receive a Statement of ERISA rights. HARTPLN 81. As discussed above, ERISA itself does not require a beneficiary to exhaust her administrative remedies prior to vindicating her rights under the statute. The Court concludes that this "ERISA INFORMATION" does not articulate any requirement binding Plaintiff to appeal to her Plan administrator prior to filing suit.

ORDER - 11

therefore, proceeds to the legal issue at hand—whether Plaintiff is disabled within the meaning of the Plan.[4]

5. Plaintiff devotes her briefing to detailing her physical impairments and the way in which they impact her ability to continue working. Hartford largely avoids the issue of whether Plaintiff is prevented from performing one or more of the essential duties of any occupation, asserting that its termination of benefits was based on a straightforward calculation of Plaintiff's earnings, which exceeded the limits articulated in the Plan's termination-of-benefits provision. Under that provision, Plaintiff's benefits were to be terminated on the date that her Current Monthly Earnings exceeded the product of her Indexed Pre-disability Earnings and the Benefit percentage if she was receiving benefits from being disabled from any occupation. HARTPLN 33. The parties agree that the applicable "Benefit percentage" is 60%.

However, Plaintiff argues that this termination provision is inapplicable to her because she was not, at the time the termination decision was made—September 9, 2016—receiving disability benefits. Hartford counters that Plaintiff was receiving benefits because it reinstated them in its letter admitting fault eight days earlier. Hartford points to no other proof other than its statement that it sent the claim "back to the claim office . . . in order for [Plaintiff]'s LTD benefits to be

---

[4] An additional exception to the prudential exhaustion requirement is recognized when "resort to the administrative route is futile." *See Vaught*, 546 F.3d 626–27 (*quoting Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980)). The Court agrees with Plaintiff that exhaustion would be futile in this case, as Hartford made clear upon re-review of Plaintiff's file its position that Plaintiff was not disabled within the terms of the Plan.

ORDER - 12

reinstated." Dkt. 17-3. The Court does not consider this statement of *intent* to reinstate as evidence that benefits actually *were* reinstated. The Court will, therefore, infer that Plaintiff was not receiving benefits at the time that she received the September 9 notice of termination. Plaintiff is quite correct, then, regarding the applicability of the termination provision—what is not being administered cannot be terminated. Hartford's "updated" decision terminating benefits effective October 1 rather than September 6 is unsupported by the text of the Plan.

6. It is up to the Court, then, to determine not whether Plaintiff's earnings exceed 60% of her Indexed Pre-disability Earnings, but rather whether Plaintiff is prevented from performing one or more essential duties of any occupation. The Court cannot make that determination on this record. The record is replete with information regarding Plaintiff's physical limitations and the impact that her medical condition has on her ability to perform in the workplace. However, there is sparse vocational information from which the Court could adequately determine whether Plaintiff is capable of performing *any* occupation. There appears to be one Employability Analysis Report, dated August 28, 2015, determining that Plaintiff was capable of assuming a position as either a Training Representative or Research Assistant. HARTRCD 193–95. The Report does not contain a thorough analysis, concluding only that:

> the claimant has the capacity and work experience to perform the sedentary/light skilled to semi-skilled occupations identified above[.] These occupations exist in reasonable numbers in the national economy, use worker traits and habits the claimant possesses, are obtainable on a part-time basis and are within her physical abilities.

ORDER - 13

> These findings are indicative that Ms. Inwood possesses the capabilities to perform these occupations with minimum training in tools and/or materials and is employable.

HARTRCD 193. Further, the report does not give a survey of options from which the Court could feasibly determine whether Plaintiff is capable of performing the essential functions of any occupation. Plaintiff's rehabilitation specialists have opined that she should not be working, but given the conclusory nature of Hartford's Employability Report, the Court cannot conclude with an appropriate degree of certainty whether any occupation exists to accommodate Plaintiff's limitations. HARTRCD 321, 325. In this *de novo* review, the Court does not afford Hartford any deference to its conclusion that Plaintiff is qualified to assume the roles of Training Representative and Research Assistant. *See Perryman*, 690 F.Supp.2d 917 at 942. Therefore, the Court denies Plaintiff's Motion for Judgment and remands to Hartford with instructions to perform a thorough employability analysis to determine whether, as of September 6, 2015, Plaintiff was disabled under the terms of the Plan and to develop the record accordingly. *See Kowalski v. Farella, Braun & Martell, LLP*, 2008 WL 5397511, at *15.

**V.     CONCLUSION**

The Court hereby FINDS and ORDERS:

1) Plaintiff's Motion for Judgment Under Federal Rule of Civil Procedure 52 (Dkt. # 16) is DENIED.

2) The Court REMANDS to Hartford with instructions to perform a thorough employability analysis to determine whether Plaintiff is "disabled" under the terms of the Plan.

3) This matter is now CLOSED.

Dated this 9th day of August, 2017.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER - 15